UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

FREDA BAYS,

        Plaintiff,

v.                                  Civil Action No. 15-1507

THE KROGER CO., d/b/a
Kroger,

        Defendant.

MEMORANDUM OPINION AND ORDER

        Pending is the motion for summary judgment filed on
February 20, 2017, by defendant The Kroger Co., d/b/a Kroger
("Kroger").  This case presents a deliberate intent claim
brought by an employee under the West Virginia Workers'
Compensation Act.

I.  Background

        Kroger is a limited partnership created under the laws
of Ohio with its principal place of business in Cincinnati,
Ohio.  Plaintiff Freda Bays is a resident of Huntington, West
Virginia and was formerly employed by Kroger as a customer
service manager in the Huntington, West Virginia store located
at Seventh Avenue and First Street.  Amended Compl. at II; see
also Exhibit 1 to Pl.'s Resp. to Mot. for Summary Judgment
("Gandee Deposition") at 5.

1

The first amended complaint, which is the operative complaint, alleges that on September 9, 2013, Kroger "caused a floor fan to be placed in the workplace." Id. at IV.[1]  The floor fan "did not allow for safe clearance of the aisle and/or doorway, as it obstructed said area, and caused an unsafe working condition." Id.  Plaintiff alleges that Kroger had actual knowledge of the unsafe working condition and of the "strong probability of serious injury or death" presented by the fan because "employees had informed management of the hazard posed by the floor fan." Id.  Although Kroger was aware of the unsafe working condition, Kroger "nevertheless intentionally thereafter exposed" plaintiff to it. Id.  "As a result of being exposed to the unsafe working condition caused by the improperly placed floor fan, [plaintiff] was seriously injured and required medical attention when she tripped and fell over the floor fan cord while on her way from the [customer] service area to the accounting area of the store." Id.

Plaintiff alleges that as a result of her fall, she suffered from and will continue to suffer from: (1) "serious personal injuries of a permanent and indefinite duration;" (2)

---

1 On February 16, 2016, the court granted Kroger's motion to dismiss the complaint. Plaintiff thereafter filed a motion for reconsideration and a motion for leave to file the first amended complaint, which the court granted on August 16, 2016, and vacated the previously entered judgment order.

"pain and suffering, physical and mental, past, present and future;" (3) "loss of enjoyment of life, past, present and future;" (4) "loss of capacity to earn an income, and perform household and other related duties, past, present and future;" (5) "past, present and future medical expenses of a sum which can be made certain;" and (6) "annoyance, inconvenience, embarrassment and humiliation." Id.

Plaintiff's deposition was taken on November 3, 2015. During the deposition, she explained in further detail how the accident occurred. Plaintiff stated that she was working in the customer service area, which adjoins the accounting area of the store, and that she was walking from the customer service area to the accounting area, which is connected by a door. See Exhibit 2 to Pl.'s Resp. ("Plaintiff's Deposition") at 33-34. According to her,

> I don't know why I was going back to the office, but
> evidently — maybe to get the pharmacy till to give to the
> person working in the pharmacy, but I went through the door
> and my left foot got caught on the fan cord and it threw
> me, and when it threw me, I grabbed the doorknob.  I
> grabbed the doorknob to keep from hitting the safe and
> hitting my head, and when I grabbed the doorknob, the door
> just kept walking, so I had to walk on my knees. . . . And
> when I fell, I chattered my teeth.  I went (indicating)
> like that real hard.

Id. at 34-35.

Plaintiff stated that for 10 to 12 years, employees would take a fan from Kroger's inventory during the summertime to cool the customer service and accounting areas.  Id. at 35. Stephen Gandee, the general manager of the store, additionally stated that a fan from the store had been used in the customer service and accounting areas for years to cool the areas because those areas got extremely hot in the summer.  See Plaintiff's Deposition at 34-36; see also Gandee Deposition at 24, 34-36. Plaintiff testified that employees moved the fan around in the customer service and accounting areas depending on where they were working.  Plaintiff's Deposition at 35-36.

## II.  Governing Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable

to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.

The moving party has the initial burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies this burden, then the non-moving party must set forth specific facts, admissible in evidence, that demonstrate the existence of a genuine issue of material fact for trial.  See id. at 322-23; Fed. R. Civ. P. 56(c), (e).

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.

## III.  Discussion

### A. Deliberate Intent Requirements

The West Virginia Workers' Compensation Act ("the Act") was designed to provide a simple, expeditious method of resolving disputes arising from workplace injuries.  Mitchell v. State Workmen's Comp. Comm'r, 163 W. Va. 107, 117, 256 S.E.2d 1, 9 (1979); Meadows v. Lewis, 172 W. Va. 457, 469, 307 S.E.2d 625, 637 (1983).  To that end, the Act "remove[s] from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee."  W. Va. Code § 23-4-2(d)(1).  Section 23-2-6 of the Act thus specifically provides that covered employers — as well as any "officer, manager, agent, representative, or employee" of such employers, are "not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring. . . ."  Id. at § 23-2-6.

This immunity is not absolute.  It "may be lost . . . if the employer or person against whom liability is asserted acted with deliberate intention."  W. Va. Code § 23-4-2(d)(2).  Deliberate intent may be established in either of two "separate and distinct" ways.  Syl. Pt. 1, Mayles v. Shoney's Inc., 185 W. Va. 88, 405 S.E.2d 15 (1990) (referring to W. Va. Code § 23-4-

2(d)(2)(i) (requiring specific intent to injure or result in death) and (ii) (requiring strong probability of serious injury or death)).  Only the second method is at issue here.  <u>See</u> Def.'s Mot. for Summary Judgment and Pl.'s Resp. to Mot. for Summary Judgment.

A plaintiff must prove the following five elements to establish a deliberate intent cause of action pursuant to § 23-4-2(d)(2)(ii):

(A)   That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B)   That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C)   That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D)   That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

> **(E)** That the employee exposed suffered serious compensable
> injury or compensable death as defined in section one,
> article four, chapter twenty-three whether a claim for
> benefits under this chapter is filed or not as a
> direct and proximate result of the specific unsafe
> working condition.

W. Va. Code § 23-4-2(d)(2)(ii)(A)-(E).[2]

Kroger asserts that plaintiff has failed to meet her burden with regards to the second, fourth, and fifth elements, saying nothing about the first and third elements required to establish a deliberate intent claim.

### B. Application of the Deliberate Intent Elements

### 1. Specific Unsafe Working Condition

The first element requires a plaintiff to show "[t]hat a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death." § 23-4-2(d)(2)(ii)(A). Kroger does not contest that plaintiff has made the requisite showing as to this element.

As earlier noted, plaintiff has testified as to the specific unsafe working condition presented by the fan cord and

---

2 W. Va. Code § 23-4-2 was modified, effective June 12, 2015. The parties have cited and the court is applying the previous version of the statute, which was in effect at the time of plaintiff's injury.

how she tripped over it and was injured.  Plaintiff cites to the deposition of Mr. Gandee, head manager of the store where plaintiff worked, who stated that it would be a violation of Kroger's Safety 360 rules to place a fan in a way that its cord obstructed a walkway.  Id.; see also Gandee Deposition at 29-30. Plaintiff also points to Mr. Gandee's testimony that a person could suffer a serious injury as a result of tripping over a cord and falling.  Id.; see also Gandee Deposition at 23, 35.

The cited testimony would permit a reasonable juror to conclude that a fan or its cord placed across a doorway so that it was a trip hazard for someone entering the room constituted an unsafe working condition presenting a high degree of risk and a strong probability of serious injury or death.  The court finds that plaintiff has made a prima facie showing with regard to the first element.

## 2. Actual Knowledge

Defendant maintains that it had no "actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition" within the meaning of West Virginia Code § 23-4-2(d)(2)(ii)(B).

Notably, subsection (B) contains its own two-part test: the employer must know of both the condition and know that it presents a "high degree of risk and the strong probability of serious injury or death." § 23-4-2(d)(2)(ii)(B). The actual knowledge requirement "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syl. pt. 3, <u>Blevins v. Beckley Magnetite, Inc.</u>, 185 W. Va. 633, 408 S.E.2d 385 (1991).[3]

"[T]he type of evidence presented to establish the requisite subjective knowledge on the part of the employer often has been presented as evidence of prior similar injuries or of prior complaints to the employer regarding the unsafe working

_____

3 The legislature amended § 23-4-2(d)(2)(ii)(B) in 2005, substituting the language "[t]hat the employer, prior to the injury, had actual knowledge of the existence of a specific unsafe working condition," in the place of "[t]hat the employer had a subjective realization and appreciation of the existence of the specific unsafe working condition." <u>Coleman Estate ex rel. v. R.M. Logging, Inc.</u>, 222 W. Va. 357, 361, 664 S.E.2d 698, 702 n. 7 (2008). This change made no practical difference in interpreting the statute, however, because in <u>Blevins</u> the West Virginia Supreme Court of Appeals read the terms "subjective realization" and "appreciation" to require a showing of "actual knowledge." Syl. Pt. 3, <u>Blevins</u>, 185 W. Va. at 633, 408 S.E.2d at 385.

condition. . . ." Ryan v. Clonch Indus., 219 W. Va. 664, 673, 639 S.E.2d 756, 765 (2006). Indeed, cases addressing the "actual knowledge" requirement have focused on factors such as (1) whether any prior injuries had occurred because of the condition; (2) whether the employer previously had been cited by government officials for the violation; and (3) whether there had been any prior complaints that would have put the employer on notice of the high degree of risk and strong probability of serious injury or death created by the condition. See, e.g., Blevins, 185 W. Va. 633, 639-40, 408 S.E.2d at 391-93 (survey of cases). Yet, "evidence of prior similar incidents or complaints is not mandated by W. Va. Code 23-4-2([d])(2)(ii)." Syl. pt. 2, in part, Nutter v. Owens-Illinois, Inc., 209 W. Va. 608, 550 S.E.2d 399 (2001). Finally, the West Virginia Supreme Court of Appeals has further observed that, "[o]bviously, an unsafe condition that develops or first springs into existence close in time to the accident presents less of an opportunity for the employer to realize and appreciate the risk. Thus, [a court's] consideration of the unexpected occurrence of the unsafe working condition [is] merely a part, and a proper part, of its analysis" of the actual knowledge requirement. Deskins v. S.W. Jack Drilling Co., 215 W. Va. 525, 531, 600 S.E.2d 237, 243 (2004).

Kroger argues that plaintiff cannot establish that her supervisors, Mr. Gandee and Mr. Spoor, were actually aware of the fan being placed on the floor so that the fan or its cord were a trip hazard. Memo. in Supp. of Mot. for Summary Judgment at 10-12. In support of this, Kroger cites to deposition testimony of plaintiff, where she said that she was not concerned about the fan cord being a trip hazard. Id. at 11. Kroger additionally cites to the testimony of Mr. Gandee and Mr. Spoor, who testified that no employee came to them concerned that someone may trip over the fan. Id. at 12.

Plaintiff argues that while Mr. Gandee first testified in his deposition that he had never seen a fan in the area where plaintiff was injured, "later in his deposition, he admitted that he had seen a fan in the area where Plaintiff was injured and described it as a 'box fan.'" Resp. at 6 (emphasis in original). According to plaintiff, "[h]is testimony indicates that it was commonly placed in the aisle of the accounting room due to the extreme heat in the work area." Id. In addition, plaintiff cites to Mr. Gandee's statement that someone could suffer a serious injury from tripping over a cord. Id.; see also Gandee Deposition at 23, 35.

Mr. Gandee testified that while a fan cord stretching across a walkway could be potentially dangerous, he had "never

12

seen it set out in the middle of the floor." Gandee Deposition
at 32. According to Mr. Gandee,

> there's no way to put [the fan] in the floor, because you
> either have to pick it up and move it, because you're
> talking about a doorway of approximately, what? 36-inch
> standard door. . . . So the fan would have to be – if –
> say, for example, it was sitting in front of the door going
> into the accounting room, it would have to be picked up and
> moved before they could ever get into the accounting room.

Id.

Plaintiff's testimony on whether she was concerned
about the fan or its cord or whether her supervisors knew about
either's placement in front of the doorway between the customer
service area and accounting room was as follows:

> Q: Did you ever complain about the fan being in there?
>
> A: Yes. We all complained about it, about it being, you
> know, because it's so hot, and about like setting on the
> table or in the floor or on the table behind us. Everyone
> just moved it. Wherever you wanted it, they moved it.
>
> Q: Okay. Did you complain about the fan itself, or were
> you complaining about just the heat back there?
>
> A: The heat.
>
> Q: I guess my question is, was this fan and the cord being
> in there ever a concern of yours that someone might trip
> over it and hurt themselves?
>
> A: Well, it's possible they could. They did. But no, it
> wasn't my concern.
>
> . . .
>
> Q: And I guess that's what we have to try and figure out.
> Was this something – I mean you were actually a manager of

sorts, weren't you?  Did any of your subordinates, maybe Ms. Counts or Ms. Coco, did they ever come to you and say, you know, I've got a concern about this fan being in here and this cord?

A: They never did come to me.  They just always would say, 'That cord or that fan, we need to do something with it.' We'd tell Mr. Gand[ee].  We told Mr. Spoor, whoever was our co-manager.  This has been going on since — I don't know if you remember John Fife, J.K. Fife, he was front end coordinator and that was years ago.  It's been going on ever since he's been there, ever since he was there.

Q: Okay.  And again, I've not had the 43 years that you've had.

A. Well, no, this was — I'm saying 10, 12 years ago.

See Exhibit 2 to Pl.'s Resp. ("Plaintiff's Deposition") at 36-37.  According to plaintiff, "This evidence clearly shows that Mr. Gandee, as an agent of his employer Kroger, had actual knowledge of the unsafe working condition that the fan being placed across an aisle or doorway posed to Kroger employees." Resp. at 7.

Although plaintiff stated that the fan cord being a trip hazard was not her concern and she did not speak to her supervisors regarding the potential trip hazard, she later testified, as just quoted, that her subordinates would say, "That cord or that fan, we need to do something with it.  We'd tell Mr. Gand[ee].  We told Mr. Spoor."  Plaintiff's Deposition at 37.

One permissible inference from plaintiff's testimony
is that she and her subordinates spoke to Mr. Gandee and Mr.
Spoor about the fan or its cord being a trip hazard, so that
they were actually aware of the dangerous condition.
Plaintiff's testimony creates a factual dispute as to whether
Mr. Gandee and Mr. Spoor were aware the fan was placed in a way
that its cord could be tripped over.  A jury could conclude from
plaintiff's testimony that she and her subordinates made them
aware of the fan cord's placement in the doorway.  They could
further conclude from Mr. Gandee's testimony regarding tripping
and from Kroger's Safety 360 - prescribing that stated
passageways should be kept clear - that Kroger was aware of the
high degree of risk and strong probability of serious injury or
death that the cord's placement posed.  The court finds that at
least genuine questions of material fact exist as to the second
element.

## 3. Violation of a Statute or Federal Law or Commonly Accepted Safety Standard

To establish the third element of her deliberate
intention claim, plaintiff must offer evidence showing that the
alleged specific unsafe working condition violated either (1) a
"state or federal safety statute, rule or regulation" or (2) a
"commonly accepted and well-known safety standard within the

industry or business of the employer as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business." W. Va. Code § 23-4-2(d)(2)(ii)(C). In either case, the law or standard must have been "specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, or regulation or standard generally requiring safe workplaces, equipment or working conditions." Id.

Plaintiff contends and Kroger does not dispute that a fan cord obstructing a doorway violates Kroger's own rules and the Occupational Safety and Health Standards contained in 29 C.F.R. 1910.22(b)(1), which reads in part as follows:

> Aisles and passageways shall be kept clear and in good repairs, with no obstruction across or in aisles that could create a hazard.

29 C.F.R. 1910.22(b)(1); Pl.'s Resp, at 7-8. Plaintiff has made a prima facie showing that the placement of the fan cord across the doorway to the accounting room constituted an obstruction that could create a hazard, in violation of 29 C.F.R. 1910.22(b)(1).

## 4. Intentional Exposure

Kroger next contends that there is no evidence that it "intentionally exposed" plaintiff to a specific unsafe working condition as required by W. Va. Code § 23-4-2(d)(2)(ii)(D).

To satisfy the "intentional exposure" requirement, there "must be some evidence that, with conscious awareness of the unsafe working condition . . . , an employee was directed to continue working in that same harmful environment." Tolley v. ACF Indus., Inc., 212 W. Va. 548, 558, 575 S.E.2d 158, 168 (2002). "In other words, this element, which is linked particularly with the subjective realization element [now actual knowledge], is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent." Sias v. W-P Coal Co., 185 W. Va. 569, 575, 408 S.E.2d 321, 327 (1991).

Plaintiff argues that Mr. Gandee's testimony demonstrates that Kroger was aware that employees used a fan in the customer service and accounting areas where plaintiff and others were required to work, due not only to complaints of it being hot in those areas, but also by virtue of plaintiff and her subordinates having told Mr. Gandee and Mr. Spoor that something needed to be done with "[t]hat cord or that fan." From that testimony it can be inferred that Kroger's supervisors

were aware of the cord's placement and the hazard it presented.[4] Pl.'s Resp. at 8; Gandee Deposition at 24, 31.

A reasonable jury could find that after her supervisors, Mr. Gandee and Mr. Spoor, were made aware of the fan and the cord, plaintiff was still required to work in the customer service and accounting areas, thereby exposing her to a dangerous condition. The court finds that plaintiff has thereby raised genuine issues of material fact with respect to the fourth element.

## 5. Proximate Cause

"Although the issue of proximate cause in a deliberate intent cause of action is statutory, the definition of proximate cause set out in the statute is the common law definition adopted by [the West Virginia Supreme Court of Appeals]." Tolley v. Carboline Co., 217 W.Va. 158, 162, 617 S.E.2d 508, 512 (2005). "'[T]he proximate cause of an event is that cause which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred.'"

---

4 When asked whether plaintiff had ever told Mr. Gandee or another supervisor that she did not wish to work in the customer service or accounting areas due to the presence of the fan cord, plaintiff additionally stated, "I mean I can't come in, if I'm working in the office, and say, well, I'm not working here today." Plaintiff's Deposition at 38.

Id. (quoting Johnson v. Mays, 191 W.Va. 628, 633, 447 S.E.2d 563, 568 (1994)).

Kroger contends that "[w]ithout presenting some evidence that Plaintiff's injury is the direct and proximate result of an identifiable, specific unsafe working condition, Plaintiff cannot establish the fifth element necessary for finding deliberate intention on the part of [Kroger]." Memo. in Supp. of Mot. for Summary Judgment at 15.

Plaintiff asserts that the evidence supports a finding that her injury was a direct and proximate result of the specific unsafe working condition consisting of the fan obstructing the doorway between the customer service and accounting areas, on the cord of which plaintiff caught her foot, causing her to fall. Resp. at 9. As a result of falling, plaintiff "grabbed the doorknob to keep from hitting the safe and hitting [her] head, and when [she] grabbed the doorknob, the door just kept walking, so [she] had to walk on [her] knees. . . . [a]nd when [she] fell, [she] chattered [her] teeth." Plaintiff's Deposition at 34-35. Plaintiff states that

After this incident, [plaintiff] received a multitude of medical treatment for her severe injuries.

MRIs were conducted and showed a complete full-thickness tear of the supraspinatus tendon as well as the majority of the infraspinatus tendon. Dr. Stanley Tao, of Scott Orthopedic, diagnosed [plaintiff] with a right

rotator cuff tear and impingement syndrome.  On August 20,
2014, [plaintiff] presented to Three Gables Surgery Center
in Proctorville, Ohio to undergo right shoulder surgery
performed by Dr. Tao.  [Plaintiff] underwent a right
shoulder arthroscopy, rotator cuff repair, and
acromioplasty for her rotator cuff tear.  [Plaintiff] also
underwent physical therapy as a result of her injury which
occurred at Kroger.

Pl.'s Resp. at 9.

The court finds that plaintiff has made an adequate

showing of the fifth element.  There is no dispute that

plaintiff suffered serious compensable injuries.  Her testimony

additionally demonstrates that the fan cord was placed across

the doorway between the customer service and accounting areas,

over which she tripped when walking from the customer service

area into the accounting area.  See Plaintiff's Deposition at

34-35.  As noted, it could be inferred from her testimony that

despite making Mr. Gandee and Mr. Spoor aware of the cord, which

she stated had been going on for 10 to 12 years, the cord was

not moved out of the doorway, nor did Mr. Gandee and Mr. Spoor

direct the employees not to place it there.  Id. at 37.  When

plaintiff tripped, she grabbed the doorknob to keep from hitting

her head, which caused her teeth and shoulder injuries.  Pl.'s

Resp. at 9.

Kroger additionally contends that "[w]here an employee

creates a specific unsafe working condition by not following

expected procedures, a deliberate intention action cannot be

maintained against an employer." Reply at 7 (quoting <u>Mayle v.</u>
<u>Mashuda Corp.</u>, No. 5:05-cv-113, 2007 WL 951691 at *5 (N.D.W.Va.
2007) (internal citations and quotations omitted)). However, to
the extent it can be inferred that the fan cord had been placed
across the doorway between the customer service and accounting
areas for years and that plaintiff and her subordinates made Mr.
Gandee and Mr. Spoor aware of the trip hazard, but they failed
to remedy the situation or tell employees not to place the fan
cord in the aisle, plaintiff has supported her contention that
Kroger was aware of the hazard and failed to remedy it.

A jury could thus find that a plaintiff's injuries
were caused by the failure of Kroger either to remove the fan
cord from the doorway between the customer service and
accounting areas or to direct employees not to place it there.

IV. <u>Conclusion</u>

Plaintiff has, at the least, raised serious questions
of material fact with respect to each of the five elements
required to establish deliberate intent. It it accordingly
ORDERED that the motion for summary judgment, filed by defendant
Kroger be, and it hereby is, denied.

21

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: May 12, 2017

John T. Copenhaver, Jr.
United States District Judge